

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00446-CV

IN THE MATTER D.S.

----------

FROM THE PROBATE COURT OF DENTON COUNTY
TRIAL COURT NO. MH-2017-493

----------

## MEMORANDUM OPINION[1]

----------

In three issues, Appellant D.S. challenges the legal and factual sufficiency of the evidence to support an order authorizing the administration of psychoactive medication. We will reverse and remand.

By an order signed on August 22, 2017, and pursuant to code of criminal procedure article 46B.073, the trial court ordered D.S. committed to an inpatient mental health facility for the purpose of attaining competency to stand trial for the felony offense of stalking. *See* Tex. Code Crim. Proc. Ann. art. 46B.073(b) (West

---

[1]*See* Tex. R. App. P. 47.4.

Supp. 2017). On November 21, 2017, Carmen Llauger-Mier, M.D. filed an application seeking an order to authorize the administration of psychoactive medication to D.S. *See* Tex. Health & Safety Code Ann. § 574.104(a) (West 2017). Among other things, Dr. Llauger-Mier indicated in the application that D.S. "has poor insight," "does not believe she is mentally ill," "suffer[s] grandiose and paranoid delusions," and had recently exhibited aggressive and assaultive behavior.

The trial court appointed D.S. counsel and signed an order on November 27, 2017, authorizing the mental health facility to administer psychoactive medication to her. However, at D.S.'s requests, the trial court stayed its order and granted D.S. a de novo hearing on Dr. Llauger-Mier's application. At the conclusion of a hearing on December 11, 2017, at which both Dr. Llauger-Mier and D.S. testified, the trial court rendered judgment in favor of the State, expressly finding that a criminal court had ordered D.S. to receive inpatient mental health services for the purpose of restoring her competency, that D.S. presented a danger to herself or to others at the inpatient mental health facility where she was being treated, and that the treatment is in D.S.'s best interest.

D.S.'s three issues raise evidentiary-sufficiency complaints. The State's burden of proof under health and safety code section 574.106 is clear and convincing evidence. *See* Tex. Health & Safety Code Ann. § 574.106(a-1) (West 2017). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

2

the allegations sought to be established. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2) (West Supp. 2017); Tex. Fam. Code Ann. § 101.007 (West 2014); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

In evaluating the evidence for legal sufficiency, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that its finding was true. *K.E.W.*, 315 S.W.3d at 20; *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008), *cert. denied*, 290 S.W.3d 873 (2009). We review all the evidence in the light most favorable to the finding. *Waldrip*, 380 S.W.3d at 138; *Hogue*, 271 S.W.3d at 248. We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *K.E.W.*, 315 S.W.3d at 20; *Hogue*, 271 S.W.3d at 248. We disregard all evidence that a reasonable factfinder could have disbelieved. *Hogue*, 271 S.W.3d at 248.

In evaluating the evidence for factual sufficiency, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that its finding was true. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.*

3

The findings made by the trial court at the conclusion of the hearing on December 11, 2017, align with health and safety code subsections 574.106(a)(2) and (a-1)(2)(A). Under subsection (a)(2), a court may issue an order authorizing the administration of psychoactive medication to a patient who "is in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental health services in the six months preceding a hearing under this section." Tex. Health & Safety Code Ann. § 574.106(a)(2). Under subsection (a-1)(2)(A), if a criminal court ordered the patient to receive inpatient mental health services to restore her competency, then to issue an order authorizing psychoactive medication, a court must find by clear and convincing evidence, after a hearing, (1) that treatment with the proposed medication is in the patient's best interest and (2) that the patient presents a danger to herself or to others in the inpatient mental health facility where she is being treated. *Id.* § 574.106(a-1)(2)(A).

D.S. argues in her first and second issues that the evidence admitted at the hearing on Dr. Llauger-Mier's application was legally and factually insufficient to prove that a criminal court had ordered her to receive inpatient mental health services. *See id.* § 574.106(a)(2), (a-1)(2)(A).

The trial court took judicial notice of the documents contained in the case file, including the August 22, 2017 order from the 16th District Court committing D.S. to an inpatient mental health facility for the purpose of attaining competency to stand trial, titled "Order Defendant Incompetent with a Probability of Recovery." Although the trial court could not have judicially noticed the truth of

4

any factual statements contained in the filings, it certainly could have taken judicial notice that the file contained an order signed by a court committing D.S. to a mental health facility to regain competency. *See In re Houston Cty. ex rel. Session*, 515 S.W.3d 334, 343 n.8 (Tex. App.—Tyler 2015, orig. proceeding).

The State also elicited testimony from Dr. Llauger-Mier that D.S. was involuntarily committed for the purpose of regaining competency pursuant to chapter 46B of the code of criminal procedure:

> Q. When you're talking about forensic unit, what are you referring to when you're talking about forensics?
>
> A. They are 46B's. They have criminal charges, whether it's a misdemeanor or a major case.
>
> Q. So on your unit you treat both individuals there under a civil commitment as well as a 46B criminal commitment?
>
> A. Yes.
>
> Q. Okay. You're familiar with the patient by the initials of D.S.; is that correct?
>
> A. Yes, I am, sir.
>
> Q. And how are you familiar with the patient with the initials of D.S.?
>
> A. Ms. D.S. . . . was transferred to us from the geriatric unit.
>
> Q. Okay. A little background. Was D.S. . . . originally committed to North Texas State Hospital for a civil commitment or a criminal commitment under 46B?
>
> A. Under 46B, criminal commitment.

Q.     As far as your work there on the unit, are 46B's -- why is somebody there on a 46B commitment?

A.     When they're deemed incompetent in jail to stand trial, they are sent to North Texas State Hospital in this case because they can't be sent to any other state hospitals to regain competency.

Q.     Is there -- does their treatment differ from somebody who's there under a civil treatment?

A.     The people that are there on the civil commitment -- they're there to treat only the mental illness.  They don't have to become competent.  They become competent because we clear the mental status and the psychosis or the mania or both in that case.  But the ones that are on criminal, on the 46B -- they have to become competent so they can help their lawyer in their case so they can stand for trial and go on with their life.[2]

As the trial court is well aware, chapter 46B covers incompetency to stand trial, including the procedures to be followed after a determination of incompetency, which includes commitment to a mental health facility for competency restoration services.  *See* Tex. Code Crim. Proc. Ann. arts. 46B.001–.171 (West 2006 & Supp. 2017).  The trial court reasonably could have deduced from Dr. Llauger-Mier's testimony addressing D.S.'s criminal commitment pursuant to chapter 46 that a court had ordered D.S. committed for the purpose of receiving inpatient mental health services.  *See Lynch v. Ricketts*, 314 S.W.2d 273, 276 (Tex. 1958) (explaining that factfinder may draw reasonable inferences and deductions from evidence); *In re C.S.*, 208 S.W.3d

_____

[2]D.S.'s own testimony echoed Dr. Llauger-Mier's to an extent; she explained that she was committed after a jury had determined that she was incompetent to stand trial.

77, 81 (Tex. App.—Fort Worth 2006, pet. denied) (reasoning that to support finding under subsection 574.106(a-1)(2)(A) or (B), evidence at trial must reflect that criminal court ordered patient to receive inpatient mental health services). We overrule D.S.'s first and second issues.

In her third issue, D.S. argues that the evidence is legally and factually insufficient to support the trial court's subsection 574.106(a-1)(2)(A) finding that she presents a danger to herself or to others in the inpatient mental health facility. In determining whether a patient presents a danger, we are instructed to use the following criteria set out in health and safety code section 574.1065:

> (1)  an assessment of the patient's present mental condition;
>
> (2)  whether the patient has inflicted, attempted to inflict, or made a serious threat of inflicting *substantial physical harm* to the patient's self or to another while in the facility; and
>
> (3)  whether the patient, in the six months preceding the date the patient was placed in the facility, has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to another that resulted in the patient being placed in the facility.

Tex. Health & Safety Code Ann. § 574.1065 (West 2017) (emphasis added).

Dr. Llauger-Mier testified that D.S. was diagnosed with psychosis NOS (not otherwise specified). Her symptoms include delusions, paranoia, and grandiosity, and she disagrees that she has a mental illness that requires treatment and medication.

7

As for D.S.'s conduct, Dr. Llauger-Mier opined that D.S. presented a danger to herself or to others because she had engaged in the following behavior:

•D.S. used profanity, without provocation, against male staff members;

•D.S. pushed a staff member, without provocation;

•D.S. kicked a patient who had spilled Kool-Aid on her, causing the patient "serious injuries";

•D.S. threatened to have sex with a patient who would knock on her door and try to enter;

•D.S. pushed a patient off of her wheelchair, causing the patient a "fracture," an "injury";

•A female staff member felt threatened and asked to be transferred to different unit because D.S. was "trying to engage her in sexual actions"; and

•D.S. was caught massaging the legs of one patient and the gluteus of another. Because mentally ill patients are incapable of consenting to such acts, D.S. presented a "threat of assault" to them.

Of those seven grounds, only two objectively implicated the substantial-physical-harm requirement contained in subsection 574.1065(2)—the Kool-Aid incident and the wheelchair incident. And even then, when pressed on cross-examination whether the Kool-Aid incident had caused the other patient "serious injury," Dr. Llauger-Mier balked, declining to categorize the injury as serious, stating, "It was an injury." That leaves only the wheelchair incident. Although the trial court could have rationally inferred that D.S. had inflicted substantial physical harm upon the other patient by causing her a "fracture," the remainder of the evidence

8

simply did not rise to the same legislatively prescribed level of seriousness that must exist to support a finding of danger under subsection 574.106(a-1)(2)(A). *See id.* (requiring substantial physical harm). Dr. Llauger-Mier confirmed as much, acknowledging that D.S. was *not* a danger to the other patients during the day, when "there's a lot of staff watching."[3] D.S. testified and denied that she had engaged in any assaultive conduct or behavior that could be described as serious.

The standards by which we review the trial court's subsection 574.106(a-1)(2)(A) finding for legal and factual sufficiency compel the result here. Viewing the evidence in the light most favorable to the trial court's finding, we hold that the evidence is legally sufficient to show that D.S. presents a danger to herself or to others at the inpatient mental health facility where she is being treated. However, viewing the entire record, and for the reasons detailed above, we conclude that the disputed evidence that the trial court could not have credited in favor of its finding of danger is so significant that the trial court could not reasonably have formed a firm belief or conviction that D.S. presents a danger to herself or to others at the inpatient mental health facility where she is being treated. Thus, the evidence is factually insufficient to support the trial court's subsection 574.106(a-1)(2)(A) finding. *See Moore v. State*, No. 07-10-0507-CV, 2011 WL 3587439, at *5 (Tex. App.—Amarillo Aug. 16, 2011, no pet.) (mem. op.)

---

[3]Dr. Llauger-Mier assigned D.S. to a private room, where she sleeps at night.

9

(holding evidence insufficient to support finding that appellant was danger to herself or to others based on evidence that appellant was "loud and verbally intimidating" and presented an "'indirect danger' that could not be defined"); *see also In re C.P.*, No. 02-14-00246-CV, 2014 WL 5409107, at \*4–5 (Tex. App.—Fort Worth Oct. 23, 2014, no pet.) (mem. op.) (holding evidence legally sufficient but factually insufficient to support trial court finding that appellant lacked capacity to make decision regarding the administration of medication); *State ex rel. D.L.S.,* 446 S.W.3d 506, 516–17 (Tex. App.—El Paso 2014, no pet.) (holding evidence legally sufficient but factually insufficient to support finding that appellant presented danger to himself).  We sustain D.S.'s third issue.

Having sustained D.S.'s third issue, we reverse the trial court's order authorizing psychoactive medication and remand this cause for further proceedings.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  WALKER, MEIER, and BIRDWELL, JJ.

DELIVERED:  March 8, 2018

10